Microsoft Office Word MSWordDoc Word.Document.8 Microsoft Office Word Document MSWordDoc Word.Document.8 Good morning, your honors. This appeals about two reversible errors in the board's claim construction. The first error is that despite clear disclaimer, the board failed to limit the transmitting step to push transmission. The second error is that the board construed the phrase without user interaction to cover with user interaction. Both errors result in a reversal. Focusing on the first error, computer-to-computer communications include either push transmission or pull transmission. The distinction between the two is well known in the art and depends on which computer initiates the transaction or the transmission. A push transmission means that the first computer initiates the transmission of a message by sending it to the second computer. A physical analog of this is when I send you a letter. I push the letter to you when I put it in the mail. Bridget, can I have you get JA3762? We have here the definition from Motorola's own expert, Dr. Alexander, on page JA3762. Question, what is your understanding of the term push? Well, in the 90s, in the mid-90s, one of ordinary skill in the art understood push to mean that the content messages could be delivered to your computer, your client computer without either the client computer itself or the user of the client computer requesting that information. It was a fairly well understood concept. I do not believe the definition of push transmission or pull transmission, which we're going to talk about in a moment, is disputed. A pull transmission, on the other hand... Those are terms that are used in the claims, right? The reference I'm... so if we look at the file history... The answer is yes, right? They're not used in the claims. Push transmission is not used in the claims. That's correct. This is a... I believe it's a disclaimer... And there were embodiments in the specification that included pull transmission, right? Both embodiments in the specification include push and pull embodiments. So if we turn to... I can show you where that's at in the specification. I know where it is. Thank you. If we turn... Bridget, can I have you please hand me the J.A. specification? I'm on J.A. 051. I'm on column 4, lines 46. Figure 3. Figure 3 is one of the embodiments. Classical email is a push technology. Email pushes... Go back. Where are you? I am on column 4, starting with line 46. Figure 3, which is one of the embodiments, illustrates how classical electronic email is run over an intermittent connection, 303, to a machine 304. It is not continuously connected to the Internet. This type of system may be used protocols. Also, we see here that figure 2 as well uses standard classical email protocols. They all start with a push. So your contention is that even though the specification included pull embodiments, those embodiments were disclaimed in the prosecution history? Yes. No? I've got to answer the question. Yes or no? Or maybe? No. Maybe might be the better answer. The only embodiments start with a push and end with a pull, just like the claims. The claims, we argue, start with a push, pushing the message to the second computer, and end with a pull, the second computer automatically retrieving the message for the user without user interaction. Push is the automatics, is the sending. The pull is the retrieval. Are you now saying that the specification doesn't disclose pull embodiments? Not just pull embodiments by themselves. What do you mean by themselves? In the background, the specification talks about pull-only embodiments. Pull-only would be an Internet browser. When you browse the Internet, you type in the URL, and you pull or retrieve the information to yourself. So the background of the specification does talk about pull-only systems. But the specification, the detailed description, talks about systems that combine push email or push technology with pull systems. So you have a push-pull. It could be that a system has both a push and pull functionality, but those are really exclusive, aren't they? I mean, push and pull don't have the same meaning. Push and pull are very distinct. That's right. Push means the first computer initiates the transaction. Pull means the second computer initiates the transaction by retrieval. In the prior, the two were very distinct. This invention combines the two together. And the disclaimer that is of particular importance... But combines them in what way? They're still distinct. They're still distinct. There's just two different steps in the claims. There's the transmitting step. That's the pushing. Then there's the decoding step. It combines the functionality, but not the... It combines perhaps that now you have a system that both pushes and pulls. That doesn't mean that they're the same. The distinction that existed in the prior still exists. That's right. That is correct. So let's turn to the file history statement. It's on JA-795. I don't know why she's getting that. Three times in the file history, the applicant made a statement that limited the present invention. The applicant stated, and there's two distinctions. The applicant stated the present invention, one, pushes information to the user. And two, the content of that information or additional information is automatically retrieved for the user without user interaction. So we argue that two separate disclaimers were made. In terms of the amendment, you only amended a part of the claim relating to decoding to say that it was automatic without user interaction. You didn't amend the transmitting step to say that. That is correct. There are multiple claims. Claim 39, for instance, was not amended at all. Claim 39 talks about the transmitting. It's all about transmitting after the comprising. It talks about the computer receives and then it's all about the transmitting. It wasn't amended at all. Claim 21, which is one of the representative claims, wasn't amended at all. It didn't add automatic. It didn't add without user interaction. Yet all these claims were allowed after these three file history statements were made. So let's look at the express language and the grammar to understand what this statement meant. The statement was the present invention, one, pushes information to the user. And two, the content of that information is automatically retrieved. Motorola would like to lump the two distinctions together and say that they both apply to the decoding step. This is incorrect. It's not consistent with the express claim language. It's not consistent with the grammar of the statement. If we look at the express claim language, the decoding step states that the message is decoded by retrieving data. Retrieval of data is a pull transmission. One can't read the push distinction into that retrieval. It would be inconsistent to say a retrieving step pushes information to the user. It would not be consistent with the express claim language of the decoding step. The only step in the claims whose express claim language is consistent with pushing data to the user is the claimed transmitting step, which states that... But you didn't amend the transmitting step. We did not. Even under your language where you say that it's on page 795 of the appendix, you say pushes information to the user and the content of that information or additional information is automatically retrieved for the user without user interaction. You say that was a disclaimer, but you didn't include it in the transmitting step of the claim unlike the decoding step. So why shouldn't we think that you're referring to the decoding step throughout here when that's the only amendment that was made to the claim? There was an amendment. There's certainly case law that shows that a disclaimer can include in addition to an amendment. But I don't think you're addressing my question. I'm sorry. I'm sorry. I read you this language here and this automatically without user interaction. This language that you say creates a disclaimer was only added to the decoding step of the claim. It wasn't added to the transmitting step of the claim. Doesn't that suggest that we should construe this language as referring to the decoding step and not the transmitting step? No, I don't believe so. I think that there was certainly an amendment made to some of the claims, not to all of them. The amendment is important and it was a distinction. But there is a separate prosecution disclaimer, a second distinction, the first distinction. It says here that the distinction of pushing information to the user with respect to the transmitting step did separately distinguish the references. But I don't think you're answering my question. Since this language was added to the decoding step, if the language was meant to apply to the transmitting step, why wasn't the same language added as a claim amendment to the transmitting step? I think it was not added to the transmitting step. The pushing of information to the user, that wasn't added to the decoding step either. The pushing information to the user, mind you, there's two distinctions combined with an and. The same language that you're relying on in the prosecution history was added to the decoding step automatically without user interaction. But it was not added to the transmitting step. No, because we believe that the second part of the statement, automatically retrieving without user interaction, was added to the decoding step and it relates to the decoding step. There's no disagreement between the parties that the second distinction of that sentence relates to the decoding step. We're arguing that the first distinction, which was not added to the claims, not added anywhere in the claims, serves as a separate prosecution disclaimer that disclaims the art that was cited and was of record. And we believe it applies to the transmitting step because of the express claim language of the claims it doesn't make sense if it applies to the decoding step. You can't push with a retrieval. Second, the grammar. Let's look at the grammar of the actual statement. It says the present invention pushes information to the user and the content of that information, that information is referring to the information that's been pushed. It's that information that's automatically decoded. The pushing has to occur prior to the decoding. Has to occur prior to that claim amendment you're referring to. It wouldn't make grammatically sense if it didn't. Would it be fair to say that every transmitting step is a pushing step? That is correct. That is our contention. You could read the claim as transmitting by pushing with the first computer to the second location or you could read it as push transmitting. So the focus had to be on the second step. I'm sorry? The focus had to be on the second step, the second computer. Well, there's focus on both steps. There's focus on both steps in the specification and the file history. The statement refers to both steps. The first part is to the pushing, which is the transmitting. The second portion is to the decoding with the automatic retrieval. You're into your rebuttal time, Mr. King. Do you want to say a bit? Yes. Mr. Conrad? Good morning and may it please the court. The board's construction is correct. When the claim language says transmitting by the first computer, it simply means that the first computer performs a transmission. There is no exclusion of responsive transmissions of any kind. In fact, the intrinsic evidence barely discusses the transmitting step. And when it does, it confirms that the ordinary meaning applies and that conventional transmitting techniques are used. The only transmitting system that is named in the specification is the Post Office Protocol Version 3 system. The POP 3 system is a request and response system. It involves a request to retrieve messages. At other points in the specification, it notes a different configuration that allows the message to be fetched. That's at JA 53 in column 7. The specification goes on to describe various uses of the alleged invention that include things like customer orders, complaints, questions and comments, all circumstances and contexts in which you would expect to have a request for information followed by a response. Now, we pointed out this discrepancy in the specification in our brief. The board relied on that discrepancy and pointed it out. But Ivy hasn't mentioned it or explained it at all, including in their reply brief. Now, it's important to note this because it wouldn't make any sense for the specification to then to disclaim all of the uses that it then goes on to describe as being part of the transmitting step and part of the invention. The prosecution history says even less about the transmitting step. All of the arguments and all of the amendments in the prosecution history were about the decoding step. The examiner rejected the claims. The applicant responded with an amendment that included the automatic retrieval language in the decoding step. Based on that amendment and after making that amendment, the applicant then went on to make remarks and arguments expressly distinguishing the prior art on the basis of that amended decoding step language. How do you respond to your opponent's argument the way I understood it, that the amendment to the decoding step also applies to the transmitting step? Well, we disagree with that, Your Honor, because there's no mention of the transmitting step at all in the amendment or in the argument that followed the amendment. The transmitting step is never mentioned at all. The phrase that I believe Ivy points to is a phrase that says the present invention pushes information to the user. That's in the middle of a sentence that is talking about the amendment to the context, that is what is being discussed. Now, Ivy has argued that it's nonsensical to use the word push to refer to a retrieval. That's what they argue in their reply brief, and that's what they've argued here before the court today. But that's not what Ivy said in its patent donor response. In its patent donor response, and this is at JA 326, Ivy said this, the claimed configurations push data to a user without necessarily sending the data itself directly to the user. That's talking about the retrieval step. That is talking about the information that is not sent by the sending computer but is retrieved by the receiving computer when it automatically dereferences a URL, and it goes to the URL and gets the additional information and presents it to the user. That characterization of the retrieval step is what Ivy itself called a push. So, at a minimum, that shows that our interpretation of the prosecution history when it uses the word push, it's perfectly reasonable to read that to be discussing the decoding step and the retrieval step. And, of course, it makes even more sense because it comes in the context of an argument being made about an amendment to the decoding step, where the transmitting step was never mentioned at all. And this makes sense as well just as a matter of common sense, too, because the invention here is about the user experience. It's about what the user perceives. The user does not have to go out and manually get additional information. It automatically comes to the user. And from the user's perspective, it's fair to call that a push, but it's talking about the retrieval in the decoding step. One other thing that I would point out here is that... So, in the POP system, and you go into, let's say, access your email, then that's a retrieval? That is, and there is undisputed evidence... Is that a pull?  You see that as a pull? That is characterized as a pull communication because it's a pull system that retrieves information, retrieves messages. I would also point out, too, that there's a lot of flexibility here in how these terms have been used by IV and how these terms are used just generally. At JA608, in the hearing transcript, IV noted that there may be some communications that involve a pull, but it said that those are better characterized as a push. Well, it's a difficult line to draw. At a minimum, that shows there's a great deal of gray area involved in what is a push and what is a pull and how that may be characterized. And, of course, these words are not in the claims. Push and pull are not in the claims. They're also not in the proposed construction that IV offers. IV's construction is based on the first computer's discretion, and that in and of itself raises a great deal of ambiguity and cause for concern because that language comes from the examiner's reasons for allowance, which, as a matter of law, cannot be a disclaimer. And the other thing about that is that no one knows what the examiner meant when the examiner used the word discretion. Again, before the board, IV's counsel said, I'm not sure why the examiner used the word, and I don't know exactly what it meant. That's at JA609 and 610. That's the opposite of a clear and unambiguous disclaimer. IV's position has changed over time, too, in characterizing what it actually means by its construction and what it means by the term discretion. As best we could understand, what IV was saying in the briefing below and what IV said in its opening brief before this court was that the claims, because of the disclaimer, should exclude responses to a user request. In the reply brief, however, IV said that we had made that up. This is at page 6 of the reply brief. And there's no support for Motorola Mobility's assertion that the inventor disclaimed manual systems. Well, we didn't make it up. That came straight from IV's opening brief. In the opening brief, IV characterized the disclaimer as a disclaimer of, quote, human intervention. That's at page 29 of the brief. And they repeatedly argued that the claims excluded a response to a user request or systems in which a user merely manually pulls information. You can see that at pages 6, 28, and 31 of the opening brief and really throughout the opening brief. Now, we tried to take IV's characterization of its own construction at face value, but to the extent that their position is changing on that and they're taking some new position as to what the disclaimer means, that, again, just goes to confirm that there is no clear and unambiguous disclaimer here. Another point that I would make is that to construe the claims in the way that IV has proposed would also violate a number of other canons of construction. It would read out the only embodiments and potential uses for the invention that are described in the specification. So it would violate that canon of construction. It would mean that the term by has different meaning in the same claim. It would be used inconsistently throughout the same claim language, which is a canon of construction. And, of course, as I mentioned, it would elevate the examiner's statement, the examiner's reasons for allowance, to be a disclaimer, which this court has never held before. One other point that I would make is that counsel pointed to our expert's testimony for the proposition that push and pull had well-known meanings. I would just point the court very briefly to pages 3790 and 3791, where our expert explained that, in fact, the discussion of push in the specification is fragmentary and doesn't line up with the embodiments. And then he goes on to conclude that a request-response mechanism would certainly satisfy the claims if it had all the other limitations covered. So the expert's conclusion was that in context and in the context of the specification and of the prosecution history, again, responsive transmissions are fully covered by the claims. Now, if the board affirms based on the board's construction of transmitting, then it should also affirm, at least as to the Putts reference, because Ivey had made no other arguments with respect to that reference, and that would be sufficient to affirm the judgment. There was a second issue about pain that was not addressed in the reply brief or addressed in an oral argument. We're content to stand on the briefs with respect to that issue. If the court has no further questions. Okay. Thank you, Mr. Conard. Just to address a few remaining issues, I think one question is, does the embodiments in the specification support our interpretation of PUSH, that the transmitting step requires PUSHing? Every embodiment in the detailed description has PUSH technology. It talks about combining email with, like, POP3 or email with other retrieval systems. And I cite on column 7, lines 15 through 18, the present invention satisfies the need of merging electronic communications such as electronic mail and multimedia Internet browsers. With respect to the ordinary meaning of by, this is not an ordinary meaning case. This is a disclaimer case. It doesn't matter what the ordinary meaning of by is, as has been argued. And then with respect to the examiner's reasons for allowance, the examiner reasons for allowance did use his own words. He said, at the discretion. There's quite a bit of emphasis on what the examiner said. But under this court's precedent, it doesn't matter what the examiner said. In fact, the examiner didn't have to say anything. There would still be prosecution disclaimer just with the applicant's statements. Nonetheless, we do believe the applicant's statements are consistent with PUSH transmission. Okay. Thank you, Mr. Cain. Thank both counsel. The case is submitted.